**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL ACTION |
| | ) | No. 06-20021-02-KHV |
| v. | ) | |
| | ) | CIVIL ACTION |
| KENET DEL CID-RENDON, | ) | No. 10-2235-KHV |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's <u>Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody</u> (Doc. #644) filed April 22, 2010. For reasons stated below, the Court overrules defendant's motion.

**Factual Background**

On May 26, 2006, a grand jury returned a 21-count indictment which charged Del Cid-Rendon and 12 co-defendants. In particular, the indictment charged defendant with (1) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, 500 grams or more of cocaine, and a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(ii), (b)(1)(D), 846, and 18 U.S.C. § 2; (2) distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and 18 U.S.C. § 2; (3) possession with intent to distribute and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii), and 18 U.S.C. § 2; (4) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii), and 18 U.S.C. § 2; (5) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2; and (6) illegal re-entry into

the United States after deportation, in violation of 6 U.S.C. §§ 202(3), 202(4) and 557. Trial was set for March 20, 2007. On March 19, 2007, defendant and two co-defendants (Terri Burford and Justin Bollig) pled guilty without plea agreements. Even so, as to this defendant, the government agreed to recommend a sentence at the low end of the applicable sentencing guideline range. Defendant pled guilty to all counts of the indictment. On the day of trial, the remaining four co-defendants (Hector Moreira, Edguar Lizardo-Figueroa, Bayron Moreira and Alberto Perez-Jacome) pled guilty without plea agreements.[1]

The Presentence Investigation Report ("PSIR") noted that defendant was accountable for at least 1.5 kilograms of actual methamphetamine.[2] PSIR ¶ 88. Hector Moreira's organization distributed at least six kilograms of actual methamphetamine. See id. Defendant's base offense level was 38. Under U.S.S.G. § 2D1.1(b)(1), based on the weapons found at the 16th Street

---

[1] The Court later allowed Perez-Jacome to withdraw his plea, but a jury ultimately convicted him and the Tenth Circuit affirmed his conviction. See United States v. Perez-Jacome, 2009 WL 4829870 (10th Cir. Dec. 16, 2009).

[2] Several confidential sources indicated that they had purchased cocaine and methamphetamine on numerous occasions from Hector Moreira and his primary associates or lieutenants, Del Cid-Rendon and Lizardo-Figueroa. In addition, informants made three controlled buys of methamphetamine from Del Cid-Rendon. On January 11, 2006, agents executed a search warrant at 5117 Freeman Avenue in Kansas City, Kansas. PSIR ¶ 48. Upon entry into the residence, Del Cid-Rendon attempted to discard two plastic bags which contained 661.9 grams of a methamphetamine hydrochloride mixture, 291.2 grams of which was pure (44 per cent purity). Id. In addition, agents searched the residence and found 1.022 net kilograms of cocaine (47 per cent purity), 13.7 grams of methamphetamine hydrochloride mixture, 4.7 grams of which was pure (34.3 per cent purity), three digital scales and approximately 15 kilograms of marijuana. Id., ¶ 49.
On January 11, 2006, while executing the search warrant at 5117 Freeman, agents knocked on the front door of a residence located at 2014 N. 16th Street in Kansas City, Kansas. Id., ¶ 53. Lizardo-Figueroa greeted officers and consented to a search of the residence. Agents found some 407 grams of methamphetamine hydrochloride mixture, 162 grams of which was pure (40 per cent purity), a large amount of other drugs including marijuana and cocaine, a short-barrel shotgun in a bedroom closet and a semi-automatic handgun, with a loaded magazine, in an air/heating duct unit. Id.

residence, the PSIR gave defendant two levels for possession of a firearm. See id., ¶ 89. The PSIR noted that his co-conspirators possessed the weapons and that it was not "clearly improbable that the firearm[s] [were] connected to drug trafficking activities for which Del Cid-Rendon is accountable." Id. Defendant received a two level downward adjustment for acceptance of responsibility. Based on a total offense level of 38 and a criminal history category of III, the recommended guideline sentence was 292 to 365 months.

At sentencing, defendant objected to the PSIR because (1) it overstated the amount of drugs attributable to him, (2) it included the enhancement for possession of a firearm under U.S.S.G. § 2D1.1, (3) it did not include a downward adjustment for a minor or minimal role in the offense under U.S.S.G. § 3B1.2, and (4) under U.S.S.G. § 4A1.1, it included two additional criminal history points because defendant committed the instant offenses within two years of his release from custody. Defendant also objected to the government's failure to request a third level for acceptance of responsibility. At sentencing, the Court accepted the findings of the PSIR and overruled all of defendant's objections. It then sentenced defendant to 292 months in prison.[3] Brian L. Leininger represented defendant throughout this proceeding at the district court level.

On appeal, defendant challenged the substantive reasonableness of his sentence. In particular, he argued that his criminal history category overstated his criminal history and that he should not have received the firearm enhancement. The Tenth Circuit held that defendant did not

---

[3] The Court sentenced Hector Moreira to life in prison. Hector Moreira appealed, and the Tenth Circuit affirmed. See United States v. Hector Moreira, 317 Fed. Appx. 745 (10th Cir. Nov. 4, 2008), cert. denied, 129 S. Ct. 1600 (2009).
  The Court sentenced Lizardo-Figueroa to 235 months in prison. Lizardo-Figueroa appealed, and the Tenth Circuit affirmed. See United States v. Lizardo-Figueroa, 277 Fed. Appx. 778, 781 (10th Cir. 2008).

overcome the presumption of reasonableness of a within-guidelines sentence and affirmed. See United States v. Cid-Rendon, 301 Fed. Appx. 780 (10th Cir. 2008). Defendant filed a petition for a writ of certiorari which the Supreme Court denied on May 11, 2009. See 129 S. Ct. 2172. Howard A. Pincus represented defendant throughout his appeal.

On April 22, 2010, defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion alleges that district court counsel, Mr. Leininger, was ineffective because he did not inform defendant that if he did not plead early, he would lose the third level reduction for acceptance of responsibility (Claim 1). Defendant also alleges that appellate counsel, Mr. Pincus, was ineffective because he did not challenge the ruling that defendant was ineligible for the third level for acceptance of responsibility (Claim 2), he did not show that the district court had incorrectly calculated his base offense level based on the quantity of drugs (Claim 3), he did not challenge the sentence enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) (Claim 4), and he did not show that the district court incorrectly calculated his criminal history (Claim 5).

## **Analysis**

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

-4-

would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988) (citation omitted), cert. denied, 489 U.S. 1089 (1989). As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

**I.     Third Level Reduction For Acceptance Of Responsibility – Claims 1, 2**

Liberally construed, defendant's motion asserts that trial counsel was ineffective because he did not inform defendant that if he did not plead early, he would lose the third level for acceptance of responsibility. Even if counsel did not inform defendant that he might lose the third level for acceptance of responsibility, defendant has not shown that counsel's performance was prejudicial (that is, that it would have altered his decision to wait to plead guilty). At the change of plea hearing, defense counsel explained that until shortly before the scheduled trial, defendant could not plead guilty because he was not willing to admit certain predicate facts regarding his conduct. See Transcript Of Change Of Plea Hearing (Doc. #544) at 41-43; see also id. at 41 (defendant not interested in any sort of plea agreement until shortly before scheduled trial). Defendant has not alleged or presented evidence which suggests that if he had known that he might lose the third level

for acceptance of responsibility, he would have pled guilty sufficiently in advance of trial to receive the third level adjustment.[4] See Molano v. United States, No. 04-cr-113-T-17TGW, 2006 WL 1319541 (M.D. Fla. May 12, 2006) (not unusual for defendants to wait until eve of trial to plead, especially when government witnesses might be hesitant to cooperate; frequently in defendant's best interest to wait to see what witnesses will do). Because defendant has not shown prejudice from counsel's performance, the Court overrules his first claim for relief.

Defendant argues that counsel was ineffective on appeal because he did not challenge the district court ruling that defendant was ineligible for the third level for acceptance of responsibility. Section 3E1.1(a) of the Sentencing Guidelines provides that if defendant clearly demonstrates acceptance of responsibility for his offense, the Court shall decrease the offense level by two levels. Section 3E1.1(b) provides a reduction of one additional level "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." Defendant has not explained how his counsel's failure to

---

[4] Indeed, the history of this case suggests that defendant would not have pled guilty several months in advance of trial, before any of the major co-defendants agreed to plead guilty. See Transcript Of Change Of Plea Hearing [of Bayron Moreira] (Doc. #497) at 45-46 (co-defendant reluctant to plead because he hoped government would agree to plea which did not include conspiracy count and he did not want to testify against Hector Moreira); Transcript Of Sentencing [of Bayron Moreira] (Doc. #498) at 24-25 (co-defendant wanted to see if government would offer meaningful plea agreement); Transcript Of Change Of Plea Hearing Of Hector Moreira at 28 (plea of Perez-Jacome contingent on Hector Moreira entering guilty plea). As explained above, seven of the 13 defendants pled guilty either the day before trial or the day of the scheduled trial. The leader of the conspiracy, Hector Moreira, and two of his top associates, Lizardo-Figueroa and defendant, were among the final seven defendants to plead guilty.

raise this issue was deficient or prejudicial.[5]  The Court therefore overrules his second claim for relief.

**II.     Objection To Drug Quantity – Claim 3**

Defendant argues that counsel was ineffective because on appeal, he did not establish that the Court erred in applying a base offense level of 38.  Defendant argues that counsel should have established that his base offense level was 34 because he was "only responsible for at least 1.5 kilograms of actual methamphetamine."  Doc. #644-2 at 3.  Defendant has misread the Drug Quantity Table in the Sentencing Guidelines, which establishes a base offense level of 38 for

---

[5]     The Tenth Circuit addressed a related claim, as to Hector Moreira, as follows:

> At sentencing, the district court found that Mr. Moreira had accepted responsibility for his offenses and decreased his offense level by two points under § 3E1.1(a).  The government did not move for an additional one-point adjustment under § 3E1.1(b) and the court accordingly did not grant one.  Both the government and the court noted that the government had not been spared the expense of preparing for trial, as Mr. Moreira did not plead guilty until the morning his trial was scheduled to begin.
>
> On appeal, Mr. Moreira contends that he waited to plead guilty until his trial date only because the government had previously refused to debrief him until that point.  He argues, without legal citation, that "it is inappropriate to permit the government's obduracy to serve as a base from which he can be deprived of the third level for acceptance of responsibility."  We have held, however, that a sentencing court "can review the government's refusal to file a Section 3E1.1(b) motion and grant a remedy if it finds the refusal was (1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end."  United States v. Moreno-Trevino, 432 F.3d 1181, 1186 (10th Cir. 2005) (quotations omitted).  In this case, Mr. Moreira does not claim that the government's decision not to seek an additional one-point downward adjustment was animated by an unconstitutional motive or that it was not related to a legitimate government end.  Therefore, we do not have the authority to review it.

United States v. Hector Moreira, 317 Fed. Appx. 745, 750 (10th Cir. Nov. 4, 2008), cert. denied, 129 S. Ct. 1600 (2009).

1.5 kilograms or more of "Methamphetamine (actual)" and a base offense level of 34 for at least 1.5 kilograms but less than five kilograms of "Methamphetamine." As the PSIR notes and as defendant concedes, he was responsible for at least 1.5 kilograms of "Methamphetamine (*actual*)." (emphasis added). Any objection by counsel on this basis would have been frivolous. Defendant has not shown that counsel's performance was deficient or prejudicial in this regard.

Defendant also argues that counsel was ineffective because on appeal, he did not establish that under Apprendi v. New Jersey, 530 U.S. 466 (2000), the district court erred in sentencing defendant based on a quantity of drugs which was not alleged in the indictment and not submitted to a jury for proof beyond a reasonable doubt. Because Apprendi does not apply to sentencing factors which increase a defendant's guideline range but do not increase the sentence above the statutory maximum, United States v. Willis, 476 F.3d 1121, 1131 n.3 (10th Cir.), cert. denied, 551 U.S. 1154 (2007), counsel's failure to raise this issue was not deficient or prejudicial.

Finally, defendant argues that counsel was ineffective because on appeal, he did not argue that defendant was entitled to a two level downward adjustment because the offense involved crack cocaine. The PSIR notes that the quantities of cocaine and other drugs did not impact the base offense level because standing alone, the quantity of actual methamphetamine placed defendant at a base offense level of 38. Accordingly, counsel's failure to object in this regard was neither deficient nor prejudicial.

For these reasons, the Court overrules defendant's third claim for relief.

### III.    Objection To Firearm Enhancement – Claim 4

Defendant maintains that counsel was ineffective because on appeal, he did not establish that the firearms which officers found at the 16th Street residence were not reasonably foreseeable to

him. Section 2D1.1(b)(1) of the Sentencing Guidelines provides a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug trafficking crime. The Sentencing Guidelines provide that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3. The government bears the initial burden of proving possession of a weapon by a preponderance of the evidence. United States v. Pompey, 264 F.3d 1176, 1180 (10th Cir. 2001); United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997), cert. denied, 522 U.S. 1141 (1998); United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992). The government can satisfy this burden by demonstrating "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Pompey, 264 F.3d at 1180; United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993); see Roberts, 980 F.2d at 647. Thus, "mere proximity to the offense" may satisfy the government's initial burden. United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999); Smith, 131 F.3d at 1400. If the government satisfies its initial burden, the burden shifts to defendant to show "that it is clearly improbable the weapon was connected with the offense." Pompey, 264 F.3d at 1181; Vaziri, 164 F.3d at 568; Roberts, 980 F.2d at 647; see United States v. Dickerson, 195 F.3d 1183, 1188 (10th Cir. 1999).

In the case of jointly undertaken criminal activity such as a drug trafficking conspiracy, the district court must consider all reasonably foreseeable acts of others in furtherance of the criminal activity when applying sentencing enhancements. See U.S.S.G. § 1B1.3(a)(1)(B). The Court must "attribute to a defendant weapons possessed by his co-defendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991); see United States v. Humphrey, 208 F.3d 1190, 1210 (10th Cir. 2000)

(because defendant convicted of conspiracy, Guidelines provision authorizes increase in offense level even if gun actually possessed only by co-conspirator).

Based on the PSIR, the government had ample evidence to satisfy its initial burden. Officers recovered firearms at the 16th Street residence where they found Lizardo-Figueroa. See PSIR ¶ 160. Although defendant was not at that residence when officers searched it, officers concluded that the residence was essentially a stash house for the drug distribution activities of the conspirators. See Transcript of Sentencing [Of Lizardo-Figueroa] (Doc. #490) at 9-10 (no one lived at house; more like stash house to keep drugs and weapons). At least one confidential source stated that he purchased cocaine from the residence some four times per week and that each time, either Hector Moreira, Del Cid-Rendon or Lizardo-Figueroa would exit the back door of the residence to deliver the cocaine. See PSIR ¶ 77; see also Transcript Of Sentencing [Of Hector Moreira] (Doc. #513) at 35 (Terri Burford testified that she purchased methamphetamine from Del Cid-Rendon from 16th Street residence). Moreover, based on the close relationship between Hector Moreira, Lizardo-Figueroa and defendant, it was not clearly improbable that the firearms at the stash house were connected to the charged conspiracy. See PSIR ¶ 71 (Del Cid-Rendon and Lizardo-Figueroa were Hector Moreira's lieutenants and Del Cid-Rendon usually delivered methamphetamine); id., ¶ 75 (Hector Moreira's "associates," Del Cid-Rendon and Lizardo-Figueroa, delivered majority of cocaine); id., ¶ 77 (confidential source purchased cocaine from Hector Moreira, Del Cid-Rendon and Lizardo Figueroa, one of which would exit back door of residence located at 16th Street and Garfield Avenue to deliver cocaine); see also Transcript Of Sentencing (Doc. #545) at 6 (defendant identified more than any other individual by cooperating individuals; described by cooperator as lieutenant, kind of second in charge); Transcript Of Sentencing [Of Lizardo-Figueroa] (Doc. #490) at 11 (close

connection between Hector Moreira, Del Cid-Rendon and Lizardo-Figueroa based on cell phone calls and eyewitness accounts from confidential informants and cooperating individuals); id. at 25-26 (Del Cid-Rendon and Lizardo-Figueroa were Hector Moreira's lieutenants).

Defendant apparently argues that counsel should have established that it was clearly improbable that the firearms were connected to the conspiracy, but he has not shown a legal or factual basis for such an argument.[6] In light of the PSIR, defendant cannot show that counsel's

---

[6] The Tenth Circuit rejected Lizardo-Figueroa's challenge to the firearm enhancement as follows:

> In this case, it is clear that the government met its initial burden and Lizardo-Figueroa failed to show that it was clearly improbable that the weapons found were connected to the drug trafficking. At Lizardo-Figueroa's sentencing hearing, Deputy Jesse Valdez, the lead case agent in the drug conspiracy investigation involving Lizardo-Figueroa, testified that he had received information from a confidential informant that drug purchases were being made at a residence at 2014 North 16th Street. When Valdez went to that location, Lizardo-Figueroa was the only person present, and he granted consent to search. During the search, a shotgun was seized from an upstairs bedroom closet and a loaded .22-caliber handgun was found inside an air conditioning duct on the floor of the television room, next to the kitchen. A large quantity of drugs was found in the kitchen. Valdez characterized the place as a stash house. While no one appeared to live there, Lizardo-Figueroa had a key to the house and admitted he had rented it for a friend. Thus, it would be frivolous for Lizardo-Figueroa to argue that he showed that it was clearly improbable that the weapons were connected to the drug distribution enterprise, or that their existence was not reasonably foreseeable.

United States v. Lizardo-Figueroa, 277 Fed. Appx. 778, 781 (10th Cir. 2008). In addition, the Tenth Circuit rejected Hector Moreira's challenge to the firearm enhancement in part as follows:

> In this case, the government demonstrated, and Mr. Moreira does not dispute, that firearms and a large quantity of drugs were found (1) at the 16th Street residence which was occupied and rented by Mr. Moreira's convicted co-conspirator Mr. Lizardo-Figueroa; and (2) at the Bunker Avenue residence which was occupied and rented by Mr. Moreira's convicted co-conspirator Mr. Perez-Jacome. In both houses, the guns were located near the drugs and drug paraphernalia. Thus, it is clear that the firearms were, at the very least, possessed by Mr. Moreira's co-conspirators. See

(continued...)

-11-

objection to the firearm enhancement was deficient or prejudicial. See Humphrey, 208 F.3d at 1210 (because defendant convicted of conspiracy, Guidelines provision authorizes increase in offense level even if gun actually possessed only by co-conspirator). The Court therefore overrules defendant's fourth claim for relief.

## IV.    Objection To Criminal History – Claim 5

Defendant maintains that counsel was ineffective because on appeal, he did not show that the district court incorrectly calculated his criminal history. Under the Sentencing Guidelines in effect when defendant was sentenced, the Court correctly assessed a total of four criminal history points which placed defendant in a criminal history category III.[7] On appeal, counsel argued that

---

[6](...continued)
[United States v.] Alexander, 292 F.3d [1226,] 1231-32 [(10th Cir. 2002)]. Mr. Moreira argues, however, that Mr. Lizardo-Figueroa's and Mr. Perez-Jacome's possession of firearms was not reasonably foreseeable to him because he was not a lessee of either residence, the firearms were not in plain view, and the firearms were not used during any individual drug transactions. We disagree. We have previously affirmed application of the § 2D1.1(b)(1) firearms enhancement in a drug conspiracy case despite the defendant's contention that she did not have actual knowledge of the weapon and when there was no evidence the weapon was used during a sale, reasoning that the scope of the conspiracy and the defendant's relationship with her co-conspirator supported the district court's finding that the possession of the firearm was reasonably foreseeable. See Humphrey, 208 F.3d at 1211. That reasoning is persuasive here. Both Mr. Lizardo-Figueroa and Mr. Perez-Jacome acted under Mr. Moreira's direction to distribute narcotics as part of the conspiracy, and weapons were found in their residences in close proximity to narcotics.

United States v. Moreira, 317 Fed. Appx. 745, 748-49 (10th Cir. 2008).

[7]       Under U.S.S.G. § 4A1.1(b), the PSIR assessed two points for defendant's conviction in 2004 for illegal reentry into the United States. See PSIR ¶ 108; see also United States v. Wise, 597 F.3d 1141, 1149 (10th Cir. 2010) (language of Section 4A1.1(b) is mandatory; district court lacked discretion to decline to assign two criminal history points for conviction which resulted in sentence of at least 60 days). Because defendant committed the offenses in this case within two years following his release from custody for the prior conviction, the PSIR assessed two additional
(continued...)

-12-

defendant's criminal history was overstated based upon his single conviction. Defendant has not shown that counsel's performance in this regard was deficient or prejudicial. In particular, defendant has not shown how counsel could have persuasively convinced the Tenth Circuit Court of Appeals that his criminal history category was incorrect based on the fact that his prior conviction was a misdemeanor rather than a felony.[8] For these reasons, the Court overrules defendant's fifth claim for relief.

## V. Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Kilpatrick, 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where

---

[7](...continued)
points under Section 4A1.1(e) of the Sentencing Guidelines. See id., ¶ 110.

Unless Congress acts to the contrary, as of November 1, 2010, an amendment to the Sentencing Guidelines will remove the provisions of Section 4A1.1(e). See United States Sentencing Commission, Sentencing Guidelines for United States Courts, 75 Fed. Reg. 27388 (May 14, 2010), Amendment 5. The Sentencing Commission recently sought public comment whether the amendment should be applied retroactively to previously sentenced defendants. *If the Sentencing Commission orders that the amendment be retroactively applied to all incarcerated defendants*, defendant's criminal history will be reduced from a Category III to a Category II and defendant may be entitled to relief.

[8] The Sentencing Guidelines do not exclude illegal reentry into the United States from the criminal history calculation. See U.S.S.G. § 4A1.2(c) (except for offenses specifically noted, sentences for misdemeanor and petty offenses are counted). Defendant erroneously cites U.S.S.G. § 2L1.2 which sets forth the offense level for unlawfully reentering or remaining in the United States. Section 2L1.2 does not address how such offenses are calculated for purposes of criminal history.

-13-

factual matters raised by Section 2255 petition may be resolved on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by the record).

## VI. Certificate Of Appealability

Effective December 1, 2009, under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[9] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not made a substantial showing of the denial of a constitutional right. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #644) filed April 22, 2010 be and hereby is **OVERRULED**. The Court denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

---

[9] The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

Dated this 27th day of August, 2010, at Kansas City, Kansas.

                                          s/ Kathryn H. Vratil
                                          KATHRYN H. VRATIL
                                          United States District Judge